[Civ. No. 215.   Third Appellate District.—July 16, 1906.]

## WILLIAM BREE, Appellant, v. LEWIS WHEELER, Respondent.

WATER RIGHTS—ADVERSE POSSESSION—INTERRUPTION OF USER—SETTLEMENT.—In an action to determine water rights, where it appears that up to a certain date plaintiff was the owner of the water in dispute when a settlement was made between him and the defendant and defendant relied upon adverse possession, but it appears that plaintiff annually interrupted the defendant's use, no title by adverse possession could accrue in defendant's favor, and his rights must depend entirely upon the effect of the compromise agreement or settlement between them.

ID.—REAL PROPERTY—STATUTE OF FRAUDS—GENERAL RULE—ORAL EQUITABLE TRANSFER.—Water rights· are classed as real property, and under the general rule any agreement relating thereto must be in writing, unless an executed oral agreement is shown transferring an equity therein by possession.

ID.—AGREEMENT TO SETTLE DISPUTE—DIVISION OF WATER—EXECUTED ORAL AGREEMENT—PROTECTION OF EQUITABLE TITLE.—Where, prior to the date of the settlement, each of the parties was claiming the water in dispute, and defendant was using it for irrigation, against plaintiff's protest, and it was orally agreed, to avoid litigation and in

settlement of their respective rights to the use of the water, that they should divide it, each using one-half thereof, and the oral agreement was executed by such party being placed in possession of one-half of the use of the water, each thereby acquired a perfect equity, entitling him to a deed from the other and the equitable title of each to one-half thereof will be protected.

ID.—EXECUTED ORAL DIVISION BETWEEN OWNERS OF LAND.—The doctrine that an oral agreement fixing a disputed line between owners of land, when it is carried into execution and possession is entered into in accordance with it, is not within the statute of frauds, is based upon the right of parties to adjust their differences in respect of law by mutual agreement, which when executed is binding as to each, and is equally applicable to an executed oral agreement settling disputed water rights, immediately carried into effect, and acquiesced in for a considerable period of time.

ID.—SUBSEQUENT REPUDIATION BY ONE PARTY NOT ALLOWABLE.—Though both parties by mutual agreement may change or set aside an executed oral agreement of division, neither alone can subsequently repudiate it or destroy its effect.

ID.—POLICY OF LAW TO ENCOURAGE SETTLEMENT.—It is the fixed policy of the law to encourage the settlement of disputes and the prevention of litigation, and when such settlement has been made, acted upon and acquiesced in, parties will not be permitted to violate the compact, unless circumstances of fraud or undue influence are shown.

ID.—CONSISTENCY OF FINDINGS—SUPPORT OF JUDGMENT.—Findings in effect that plaintiff had an original right to the whole of the water, which was impaired only by his voluntary act in entering into and effectuating the compromise agreement which vested in defendant the right to one-half thereof are not inconsistent, and do not entitle the plaintiff to recover the whole of the water, but entitle the defendant who pleaded and proved the executed compromise agreement to a judgment in his favor for one-half thereof.

APPEAL from a judgment of the Superior Court of Nevada County. F. T. Nilon, Judge.

The facts are stated in the opinion of the court in the present case, and upon the former appeal (129 Cal. 146).

Charles W. Kitts, and Thomas S. Ford, for Appellant.

J. M. Walling, for Respondent.

McLAUGHLIN, J.—This is the second appeal in this case—*Bree* v. *Wheeler,* 129 Cal. 146, [61 Pac. 782]. Upon

the second trial, had on amended pleadings, the facts found show that up to 1885, plaintiff was the owner of all the water in dispute and that defendant did not acquire title thereto by adverse possession, or otherwise, unless an agreement, affirmatively pleaded in the amended answer and found by the court, operated to give him the right to one-half of the water.

Plaintiff, who is appellant here, contends that, upon the findings the court should have adjudged him the owner of all of said water instead of decreeing that each of the parties owned one-half thereof. The finding relating to the agreement above mentioned is in substantial accord with the averment of the amended answer in that behalf, and in substance is as follows: In 1885, each of the parties hereto was claiming the water in question, and defendant was using it for irrigating his land, against the protest of plaintiff. They talked the matter over, and it was orally agreed, *to avoid litigation and in settlement of their respective rights to the use of the water,* that they should divide it, the plaintiff taking it during the night and the defendant during the daytime. This method of division continued for two seasons, whereupon, plaintiff being dissatisfied, the manner of division was changed by mutual consent, and a measuring box was put in the stream which equitably and fairly divided the water, each party taking one-half thereof both day and night. This method continued for two seasons, but in 1889 plaintiff again became dissatisfied, and wrongfully tore out the measuring box. Then a board was placed in the stream by defendant, at his own expense, at a level, with two holes of equal size, to divide the water equally, and plaintiff removed this appliance. The defendant then took all the water, leaving none for plaintiff. After the recital of the foregoing facts, the finding reads as follows: "Defendant continued to divide the water as long as plaintiff would permit him to do so. In order to divide the same it was necessary that a measuring box or other suitable appliance be maintained at the point of diversion. Unless such means of division was maintained, defendant could not divide the water. This condition of affairs continued from 1889 until the commencement of this action."

As the plaintiff interrupted the defendant's use annually, no title by adverse possession could accrue, and hence the

rights of the latter and the validity of the judgment depend entirely upon the effect of the compromise agreement or settlement.

Water rights are classed as real property, and hence under the general rule any agreement relating thereto must be in writing. (Code Civ. Proc., secs. 1624, 1971; *Hayes* v. *Fine,* 91 Cal. 498, [27 Pac. 772]; *Blankenship* v. *Whaley,* 124 Cal. 304, [57 Pac. 79].) But in the case at bar the agreement was acted upon by placing a measuring box in the stream, and actually dividing the water, and by mutual consent of the parties each was placed in possession of one-half thereof. To complete the transfer nothing remained to be done except the execution of a conveyance, conveying a proper proportion of the water to each. Each had a perfect equity, entitling him to a deed from the other. When such is the case, a court of equity, in accordance with its familiar rules, considering that as done which ought to be done, will protect the right obtained "as readily and as fully as a legal title." (*Flickinger* v. *Shaw,* 87 Cal. 133, [22 Am. St. Rep. 234, 25 Pac. 79]; *Blankenship* v. *Whaley,* 124 Cal. 304, [57 Pac. 79], 142 Cal. 566, [76 Pac. 235]; *Griseza* v. *Terwilliger.* 144 Cal. 462, [77 Pac. 1034]; *Bates* v. *Babcock,* 95 Cal. 486, [29 Am. St. Rep. 133, 30 Pac. 605]; 2 Bigelow on Fraud, 445.)

There is another principle of law under which the agreement must be held binding. It has been held repeatedly and with practical unanimity that an oral agreement fixing a dividing line between owners of land is not within the statute of frauds, and that when the line is in doubt or dispute a settlement between the owners determines the location of the existing estate of each, and when followed by possession and occupancy, binds them in equity and at law as well. "If the parties have carried the agreement into execution, and entered into possession in accordance with it, the courts will not disturb it, though both parties were mistaken as to the true location of the line." (Jones on Real Property, secs. 354, 358; *White* v. *Spreckels,* 75 Cal. 610, [17 Pac. 715]; *Helm* v. *Wilson,* 76 Cal. 485, [18 Pac. 604].) "It is the policy of the law to give stability to such an agreement, because it is the most satisfactory way of determining the true boundary, and tends to prevent litigation." (*Cavanaugh* v. *Jackson,* 91 Cal. 582, [27 Pac. 931]; *Dierssen* v. *Nelson,* 138 Cal. 398, [71 Pac. 456].)

This doctrine is based on the common sense proposition that when a dispute exists between two parties, they may adjust their differences by mutual agreement, which, when executed by them will be held binding as to each, and we can think of no reason in law or logic why the principle thus applied to land should not be applied to a case where the parties have deliberately entered into an agreement settling disputed water rights, which agreement was immediately carried into effect and was acquiesced in for a considerable period of time.

And if such an agreement relating to land cannot be disturbed by the parties after it has been carried into effect, a similar executed agreement relating to another class of real property must be held equally efficacious. (Jones on Real Property, secs. 358, 359.) It must, therefore, be held that plaintiff could not repudiate the agreement made, carried into effect, and acquiesced in by him and by defendant. True, both might, by mutual agreement, repudiate it, but neither alone could do so. The court expressly finds that defendant performed the agreement as long as he was permitted to do so by plaintiff, and his subsequent use of the water did not destroy his right to the *quantum* fixed upon by mutual consent. It is the fixed policy of the law to encourage the settlement of disputes and the prevention of litigation, and when such settlement has been made, acted upon and acquiesced in, parties will not be permitted to violate the compact unless circumstances of fraud or undue influence are shown. (*Downing* v. *Murray,* 113 Cal. 462, [45 Pac. 869]; Pomeroy on Equity Jurisprudence, sec. 850.) The agreement was sufficiently pleaded and proved. The defendant was not required to elect whether he would claim title to all or only part of the water. Having been forced into court to defend his rights, he was at liberty to rely not only on his original claim of right, but upon the rights claimed under the compromise agreement. (*Miles* v. *Woodward,* 115 Cal. 314, [46 Pac. 1076]; *Banta* v. *Siller,* 121 Cal. 418, [53 Pac. 935].)

It would be strange indeed if the plaintiff, relying on his original claim and free to assail any and all rights claimed by defendant, could confine the latter to rights obtained under an agreement, which by the very commencement of the action plaintiff was attempting to repudiate. The findings are not inconsistent. The court in effect finds that plaintiff

4 Cal. App.—8

had a right to the whole of the water, which right was impaired only by his voluntary act in entering into and effectuating the agreement which vested in defendant the right to one-half thereof.

The judgment is affirmed.

Buckles, J., and Chipman, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 14, 1906.